No. 26-1503

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

AMERICAN ACADEMY OF PEDIATRICS, et al.

Plaintiffs-Appellees,

v.

ROBERT F. KENNEDY JR., et al.

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Massachusetts

# MOTION TO EXPEDITE APPEAL AND FOR EXPEDITED BRIEFING
# SCHEDULE

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

MATTHEW C. ZORN
*Senior Counsel to the Associate
Attorney General*

## INTRODUCTION

A single district judge has frozen the architecture of the national immunization system. The Advisory Committee on Immunization Practices (ACIP) develops the Nation's vaccine recommendations. The interlocutory order under review stays thirteen of the committee's fifteen appointments, leaving the ACIP without a quorum. As a result, the committee cannot supply, change, or withdraw a vaccine recommendation—for any vaccine or population—until the stay is lifted.

Prompt review is warranted. Most of the questions presented are severable, purely legal, and potentially dispositive, while the harm is ongoing—a moving licensure pipeline and a recent Executive Order both demand ACIP action the quorumless committee cannot supply. Plaintiffs themselves have urged that the case be resolved "as soon as possible." ECF No. 309, at 4.[1]

Counsel for the government conferred with counsel for Plaintiffs, who oppose this motion.

---

[1]     ECF No. __ refers to entries on the district court's docket in No. 1:25-cv-11916 (D. Mass.). Pin cites are to the page numbers generated by the district court's CM/ECF system.

**BACKGROUND**

The ACIP, a FACA advisory committee operating since 1964, is the body through which the United States develops vaccine recommendations. Work groups review evidence and present findings to the parent ACIP committee for deliberation and discussion, the committee publicly votes, and the CDC Director adopts, modifies, or rejects the result. Those recommendations anchor the national immunization system: the Affordable Care Act requires insurers to cover ACIP-recommended vaccines, 42 U.S.C. § 300gg-13(a)(2); Medicaid must cover them, *id.* §§ 1396a(a)(10), 1396d(a)(13); the Vaccines for Children program purchases based on a list established by the ACIP, *id.* § 1396s(d)(1), (e); and veterans' benefits track the ACIP schedule, 38 U.S.C. § 1701(9)(G), (10).

Plaintiffs sued in July 2025 and, through successive amendments, added Count II, which challenges the Secretary's reconstitution of the ACIP, carried out through a series of appointments over many months. After the court denied the government's motion to dismiss, *Am. Acad. of Pediatrics v. Kennedy*, 814 F. Supp. 3d 150 (D. Mass. 2026) (ECF No. 168), it asked the parties whether *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748 (2025), removed the ACIP from FACA. Plaintiffs said no, arguing that the ACIP

2

"remains a primarily advisory body" whose recommendations "are not self-effectuating and only trigger coverage determinations when subsequently adopted by the CDC Director." ECF No. 276, at 1, 4–5 (Ex. B).

On March 16, 2026, the court granted preliminary relief in part. *Am. Acad. of Pediatrics v. Kennedy*, No. 25-11916, 2026 WL 733828 (D. Mass. Mar. 16, 2026) (ECF No. 291) (Order, Ex. A). After a member-by-member review of each appointee's qualifications, it stayed thirteen of fifteen appointments, along with the January 5 Decision Memo and CDC-adopted votes from three ACIP meetings. Order at 29-30, 43-45. Plaintiffs had asked the court to enjoin the ACIP from meeting; the government argued that any stay should reach only as many appointments as necessary to cure an imbalance. ECF Nos. 183-1; 232 at 51. The court did neither. It instead stayed thirteen appointments on a theory that "the appointment process, in general, and thus the full committee, was tainted[,]" thereby leaving the committee without a quorum. Order at 43-44.

The government appeals only the stay of the appointments related to Count II. The stays of the Memo and the votes remain in place, and the pre–January 5 schedule continues regardless of this appeal. Reversing the appointment stay would restore the quorum, allow the agency to address

3

any imbalance issues on its own, and resume the recommendation process. The timing is critical. The 2026–2027 respiratory virus season (i.e., RSV, influenza, COVID) begins in the fall, and while the ACIP cannot act, no newly licensed or reformulated vaccine for those conditions can be added to the immunization schedule.

## LEGAL STANDARD

This Court may suspend the ordinary schedule "to expedite its decision or for other good cause." Fed. R. App. P. 2. Good cause is presumed for "any action for temporary or preliminary injunctive relief[.]" 28 U.S.C. § 1657(a). The decision to expedite lies in the Court's discretion.

## ARGUMENT

**I.    There is good cause for prompt appellate review.**

Without expedited review, this appeal would be overtaken by events. For example, on June 18, 2026, FDA's Vaccines and Related Biological Products Advisory Committee meets to consider licensure of a new mRNA influenza vaccine.[2] If the vaccine is licensed, its placement on the immunization schedule, and the coverage that placement triggers, will

---

[2]    *See* Vaccines and Related Biological Products Advisory Committee; Notice of Meeting, 91 Fed. Reg. 30,309 (May 22, 2026).

depend on a recommendation from the ACIP to enable implementation that a quorumless ACIP cannot supply.

The ACIP typically provides annual recommendations for the use of influenza vaccines for the prevention and control of seasonal influenza in the United States in the summer. For example, the ACIP voted to make annual influenza recommendations in its June 26, 2025 meeting. CDC adoption followed on August 28, 2025, in time for the fall flu season.[3]

Executive Order No. 14,407, 91 Fed. Reg. 33,575 (June 3, 2026), compounds the urgency. It directs the CDC and ACIP to update the childhood and adolescent schedule and every agency to align with it, a directive the frozen committee cannot carry out.

Expedition also conserves judicial resources. The questions of Count II are severable from the rest of the case, threshold, and purely legal; they need no factual development, and a single question, whether the appointments are final agency action, may dispose of the appeal, avoiding piecemeal review. The order's reach magnifies the need for resolution: by entertaining

---

[3] *See Prevention and Control of Seasonal Influenza with Vaccines: Recommendations of the Advisory Committee on Immunization Practices – United States, 2025–26 Influenza Season* (https://perma.cc/Z5S9-FRDW).

a freestanding FACA challenge to individual appointments and reviewing each appointee's qualifications de novo, it supplies a template for judicial credentialing of advisory committee appointments government wide. *See* Fed. R. App. P. 2 advisory committee's note. Whether a court may displace the Executive's personnel choices in that fashion, rather than set aside a final agency action and remand for the agency to restore balance, is a substantial and important question. The resulting paralysis of a central advisory body, absent the question's resolution, persists each day the appeal is undecided.

The case for expedited review does not depend on the government's prevailing on the threshold issues. Even if the Court rejects them, resolving the narrower, antecedent question of the standard that governs the FACA fair-balance inquiry would still serve judicial economy: it would tell the district court what standard to apply and define the scope of its inquiry on remand. That standard remains unsettled—the district court applied Rule 12(b)(6) plausibility at the motion-to-dismiss stage and then de novo, member-by-member credentialing at the preliminary-injunction stage, without identifying any governing standard. Until this Court clarifies that standard, the merits proceedings on remand cannot sensibly go forward, and a judgment entered under an erroneous standard would only invite a

second appeal. Resolving the question now thus guides the litigation below and avoids duplicative review.

## II. Substantial, purely legal, and important threshold questions warrant prompt review.

The appeal presents a single error with closely related components. The APA supplies the only cause of action, and it reaches only final agency action. The appointments are not final agency action. That same point defeats jurisdiction: Plaintiffs are not injured by the appointments precisely because the appointments are not final agency action and carry no legal consequences of their own. Standing and reviewability are thus two aspects of one defect, and the remedy error follows from the court's having adjudicated appointments the APA does not reach.

*Standing.* Plaintiffs must establish standing for each claim and for each form of relief they seek, and standing "is not dispensed in gross[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). The relief at issue here is the stay of thirteen appointments, so the question is not whether Plaintiffs are injured by federal vaccine policy in general, but whether any concrete injury is fairly traceable to the composition of the committee and redressable by disturbing it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The

injuries the court identified—changed billing, unused doses, unreimbursed counseling—are not traceable to the committee's composition. They are severed from it by the Director's intervening, discretionary decision whether to adopt a recommendation, which plaintiffs concede is the operative act, and by the independent choices of insurers, providers, and patients. For the same reason, a stay of appointments does not redress them. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380–83 (2024). The only interest tied to the appointments is an interest in who sits on an advisory body. That is not the concrete and particularized injury Article III requires, *id.* at 381, and a bare statutory entitlement to a balanced committee, without concrete harm, is "an injury in law," "not an injury in fact[,]" *TransUnion*, 594 U.S. at 427. The concrete injuries Plaintiffs and the district court identified, by contrast, are the downstream harms that trace to the adoption and implementation of a recommendation, not to the committee's composition.

*Final agency action.* The appointments are not "agency action" the APA makes reviewable. That term reaches a "rule, order, license, sanction, relief, or the equivalent," 5 U.S.C. § 551(13), each a discrete, circumscribed action, *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62–64 (2004). Appointments or reconstitution are none of them. And even if they were, they would not be

final. ACIP recommendations bind no one until the Director adopts them, and an appointment is a step further removed. *See Dalton v. Specter*, 511 U.S. 462, 469–71 (1994); *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *Cohen v. Rice*, 992 F.2d 376, 382 (1st Cir. 1993) (advisory recommendations are not final, and the techniques used to create them "even more preliminary"). Nor is a rolling series of appointments over seven months the discrete final action the APA requires. *Norton*, 542 U.S. at 62–64. *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11 (1st Cir. 2020), relied upon by the district court, is not to the contrary: there, a single written directive of general applicability barred a class of scientists from service the moment it issued, satisfying both *Bennett* prongs, and the remedy ran against the directive, not any appointment. Here, there is no directive, no published policy, and no governing instrument, only discrete, discretionary appointments whose legal consequences, if any, attach to the Director's later adoption of recommendations by the appointees.

*Remedy*. Plaintiffs sought to enjoin the ACIP's meetings; the government argued any stay should reach only as many appointments as necessary to cure the imbalance. ECF Nos. 183-1; 232 at 51. The court stayed thirteen appointments, including members it did not find unqualified,

9

disabling the committee. Injunctive relief must be no broader than necessary to redress the asserted injuries. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Here, as to the appointments, the proper interim remedy was none, because any interim relief connected to the harms Plaintiffs identified must run against the Director's adoption of recommendations, not the appointments themselves.

These defects share one root. Having reviewed a non-final action the APA does not reach, the court had no injury traceable to it, no final action to anchor review, and nothing to vacate and remand, so it credentialed the members itself and stayed the committee out of existence. Each error is legal and would require reversal, which makes the appeal both substantial and clean to resolve.

## PROPOSED EXPEDITED BRIEFING SCHEDULE

To permit expedited resolution in advance of the public health events described above, the government respectfully proposes the following accelerated schedule, under which the Court could hear argument in August and decide the appeal as soon as practicable:

1. **Opening brief:** June 16, 2026;

10

2. **Response brief:** 30 days after service of opening brief (July 16, 2026);

3. **Reply brief:** 11 days after service of response brief (July 27, 2026);

4. **Oral argument:** in August 2026, at the Court's earliest convenience; and

5. A decision as soon as practicable.

By lodging its opening brief early, the government removes its own briefing time as a variable, leaving only a response and accelerated reply. The government remains prepared to brief on any schedule the Court sets.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion to expedite this appeal and enter the proposed briefing schedule.

Respectfully submitted,

*/s/ Stanley E. Woodward, Jr.*
STANLEY E. WOODWARD, JR.
*Associate Attorney General*

MATTHEW C. ZORN
*Senior Counsel to the Associate Attorney General*
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

June 2026

**CERTIFICATE OF COMPLIANCE**

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d) because it contains 2,068 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared in Book Antiqua 14-point font.

*/s/ Stanley E. Woodward, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

/s/ Stanley E. Woodward, Jr.