**[ORAL ARGUMENT REQUESTED]**

**No. 26-1503**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

AMERICAN ACADEMY OF PEDIATRICS, et al.

Plaintiffs-Appellees,

v.

ROBERT F. KENNEDY, JR., et al.

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Massachusetts

**REPLY BRIEF FOR FEDERAL DEFENDANTS-APPELLANTS**

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

MATTHEW C. ZORN
*Senior Counsel to the Associate
Attorney General*

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT.............................................1

INTRODUCTION ..............................................................................2

ARGUMENT.....................................................................................5

I.    The Order Is an Injunction in All but Label—and the Label Concedes the Merits...................................................................................6

II.   Count II Fails at the Threshold: No Standing, No Agency Action, No Finality. ....................................................................................10

    A.  Plaintiffs' Injuries Trace to Adoptions, Not Appointments—and the Appointment Stay Redresses None of Them. ...............................10

    B.  An Appointment Is Not "Agency Action," and the Reconstitution Became "Complete" Only When the Court Stopped It. .............................14

III.  *Wheeler* Authorizes Record Review, Not Résumé Review. ....................23

IV.   The Remedy Is Unprecedented, Untailored, and Untethered to Any Plaintiff's Injury.........................................................................26

CONCLUSION ................................................................................32

CERTIFICATE OF COMPLIANCE .................................................34

CERTIFICATE OF SERVICE .........................................................35

i

**Cases**

*Abbott v. Perez*,
585 U.S. 579 (2018) ..................................................................................8

*Bennett v. Spear*,
520 U.S. 154 (1997) ................................................................................15

*Biden v. Texas*,
597 U.S. 785 (2022) ................................................................................21

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ......................................................................... 27, 30

*Calvary Chapel of Bangor v. Mills*,
984 F.3d 21 (1st Cir. 2020) ......................................................................9

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ....................................................................................7

*Ctr. for Biological Diversity v. EPA*,
168 F.4th 1164 (9th Cir. 2026) ..............................................................11

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) ................................................................................22

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ................................................................................11

*Corp. Techs., Inc. v. Harnett*,
731 F.3d 6 (1st Cir. 2013) ........................................................................6

*Davis v. FEC*,
554 U.S. 724 (2008) ................................................................................10

*Diamond Alternative Energy, LLC v. EPA*,
606 U.S. 100 (2025) ................................................................................10

*Doe v. Trump*,
  157 F.4th 36 (1st Cir. 2025) ........................................................29

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ............................................................. 11, 13

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) ................................................................31

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) ................................................................27

*Harper v. Werfel*,
  118 F.4th 100 (1st Cir. 2024) .................................................16

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ................................................................13

*INS v. Yueh-Shaio Yang*,
  519 U.S. 26 (1996) ..................................................................24

*Kennedy v. Braidwood Mgmt., Inc.*,
  606 U.S. 748 (2025) ................................................................30

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ............................................................ 19, 22

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ..................................................................23

*Nat'l Ass'n of Social Workers v. Harwood*,
  69 F.3d 622 (1st Cir. 1995) ....................................................20

*Nken v. Holder*,
  556 U.S. 418 (2009) ..............................................................6, 7

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) ..................................................................14

*Nulankeyutmonen Nkihtaqmikon v. Impson*,
 503 F.3d 18 (1st Cir. 2007) .........................................................................19

*Sexual Minorities Uganda v. Lively*,
 899 F.3d 24 (1st Cir. 2018) .........................................................................29

*TransUnion LLC v. Ramirez*,
 594 U.S. 413 (2021) ............................................................................... 10, 12

*Trump v. CASA, Inc.*,
 606 U.S. 831 (2025) .................................................................................. 3, 27

*Union of Concerned Scientists v. Wheeler*,
 954 F.3d 11 (1st Cir. 2020) ................................................................. *passim*

*Winter v. Nat. Res. Def. Council, Inc.*,
 555 U.S. 7 (2008) .................................................................................... 20, 25

**Statutes**

5 U.S.C. § 551(13) .............................................................................................14

5 U.S.C. § 705 .................................................................................................6, 7

5 U.S.C. § 1008(b) ............................................................................................30

28 U.S.C. § 1292(a)(1) ........................................................................................7

42 U.S.C. § 300gg-13(a)(2) ..............................................................................13

**Rules**

Fed. R. Evid. 201(b)(2) ......................................................................................9

**Regulations**

45 C.F.R. § 147.130(a)(1)............................................................................ 10, 13

**Other Authorities**

90 Fed. Reg. 58,408 (Dec. 16, 2025)...............................................................25

**GLOSSARY**

| | |
|---|---|
| ACIP | Advisory Committee on Immunization Practices |
| APA | Administrative Procedure Act |
| CDC | Centers for Disease Control and Prevention |
| EPA | U.S. Environmental Protection Agency |
| FACA | Federal Advisory Committee Act |
| FDA | U.S. Food and Drug Administration |
| HHS | U.S. Department of Health and Human Services |
| MBP | Membership Balance Plan |
| PI Op. | Memorandum and Order on Plaintiffs' Motion for Preliminary Injunction |
| SCDM | Shared Clinical Decision-Making |

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs say oral argument is unnecessary. Resp. Br., Statement Regarding Oral Argument. This is an expedited appeal of preliminary structural relief against the Executive Branch, and argument would materially assist the Court. Fed. R. App. P. 34(a). But the paramount consideration is a decision before the coming flu season. The government requests argument at the Court's earliest convenience, or submission on the briefs if argument would delay decision.

## INTRODUCTION

Which agency action does Count II challenge, and when did it become final? Plaintiffs never say. Their brief offers only a hedge: the reconstitution, "whether viewed as a series of individual appointments or as a reconstitution of the entire Committee." Resp. Br. 19, 32, 34.

A party defending an APA judgment ought to be able to name the action under review, the date it became final, the injury that action causes, and how the relief entered redresses it. Plaintiffs cannot because no answer survives the record: each appointment is an unreviewable personnel selection, and the "reconstitution" is an ongoing course of conduct. But here is what their counsel did say, in December 2025, defending Count II at the motion-to-dismiss argument:

> [W]ith respect to our count regarding the constitution of the ACIP, that is a claim that is one in which the facts are developing every day. . . . I think the administrative record continues to build on that claim as we go forward.

Dkt. 165,[1] at 4–5 (Dec. 17, 2025 Hr'g Tr.); Suppl. App'x 1240–41.

Those words alone should dispose of this appeal. They describe a claim with no consummated action and no fixed record. And they refute

---

[1] Citations to Dkt. __ refer to the district court docket below.

waiver in the same breath, because the government answered on the spot: "Your Honor, the administrative record does not continue to grow." Dkt. 165, at 5; Suppl. App'x 1241. Issue, joined. Far from anything being waived, the confusion about this claim has never been the government's.

Plaintiffs' defense of the remedy for that confused claim concedes the point. Asked how the government may respond if vaccine policy must move—a new pathogen, new safety data, the annual flu cycle—their answer to this Court is that the government is "free to return to the district court to seek a modification of the stay order." Resp. Br. 48. That is not a defense of the order below. It is an indictment. Under the arrangement Plaintiffs defend, the Executive Branch's vaccine-advisory apparatus answers to the court: thirteen appointments held in judicial custody, the CDC Director's authority conditioned on a committee that cannot convene, and every path forward routed through motion practice Plaintiffs have promised to oppose.

Just last Term, the Supreme Court reaffirmed that district court judges lack equitable authority to grant relief broader than necessary to provide complete relief to the plaintiffs before them. *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). Complete relief here is the stay of the actions Plaintiffs say injure them—the adopted recommendations and the January 5 Memo—relief this

appeal does not disturb in the interim. The appointment stay adds nothing except to hand custody of an Executive Branch advisory committee to the courts. A universal remedy does not become permissible because it is labeled a "stay" under 5 U.S.C. § 705. If the label controlled, *CASA* would have decided nothing.

Even assuming everything else in Plaintiffs' brief, the remedy stands nearly undefended. Plaintiffs offer no precedent for it and no answer to the objection that it places a FACA advisory committee under ongoing judicial control. An unprecedented remedy that its own defenders barely defend cannot survive review.

Plaintiffs open by cataloguing what the government's brief "does not argue." Resp. Br. 2. True enough. But an appeal directed at the vehicle, the standard of review, and the remedy concedes nothing about the merits. They also answer a position nobody argued in this case: that FACA's fair-balance requirement is unenforceable, that *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11 (1st Cir. 2020), was wrongly decided, or that courts are "powerless." Resp. Br. 44. Fair balance is fully enforceable through the APA's ordinary channels—review of a *Wheeler*-type directive where one exists, and review of the downstream final actions that rely on an

imbalanced committee—exactly what Counts I, III, and IV present. What does not exist is a third channel: freestanding review of individual appointments, with structural remedies and intrusive discovery of the Executive Branch, untethered to any reviewable action. Policy concerns (such as Amici's) may be legitimate, but every harm they identify flows from the recommendations—fully reviewable under the other counts.

The scope of this targeted appeal remains as the opening brief described it. The stay of the January 5 Memo is not challenged. The interim stay of the three adopted votes is not disturbed. What the government challenges is the FACA-based structural relief. As to that relief, the order should be reversed.

## ARGUMENT

Plaintiffs ask this Court to review the order for abuse of discretion, with "considerable deference" to the district court. Resp. Br. 21. Yet every question this appeal presents—reviewability, standing, the governing FACA standard, and the scope of remedial authority—is legal and reviewed de novo. A preliminary injunction that rests on an error of law is necessarily an

abuse of discretion. *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 10 (1st Cir. 2013); Gov't Br. 16–17. Deference has no work to do here.

The Court can resolve this appeal at the threshold: if appointments are not "agency action," there is no APA vehicle, and the order falls. *Infra* Part II.B. Standing independently requires the same result. *Infra* Part II.A. Only if the Court disagrees on both need it reach the governing standard, *infra* Part III—and even then, the remedy cannot survive. *Infra* Part IV.

## I. The Order Is an Injunction in All but Label—and the Label Concedes the Merits.

Plaintiffs first ask this Court to dismiss. The order below, they say, is not an injunction but a "stay" of "agency actions." Resp. Br. 4 (citing *Nken v. Holder*, 556 U.S. 418, 429–30 (2009)). The argument defeats itself twice.

First, the characterization concedes the merits question Plaintiffs elsewhere insist is forfeited. A stay of agency action flows from 5 U.S.C. § 705, which authorizes a reviewing court to "postpone the effective date of an agency action" pending "review." Calling the order a § 705 stay makes its validity turn on the appointments being reviewable agency action—the very question Plaintiffs say the government cannot raise. *Infra* Part II.B. Plaintiffs' jurisdictional statement and their forfeiture argument cannot both be true. If

the appointments are not reviewable agency action, the order is not a § 705 stay of anything but an injunction restraining executive officers—appealable under 28 U.S.C. § 1292(a)(1), and reversible on the merits.

Second, the order is an injunction under *Nken* itself. *Nken* distinguishes a stay, which "operates upon the judicial proceeding" and temporarily suspends the effect of what has been done, from an injunction, which "is directed at someone, and governs that party's conduct." 556 U.S. at 428–29. The order below bars thirteen individuals from serving and concludes that the CDC Director cannot alter the immunization schedule without ACIP's involvement. The order is directed at persons, and it governs conduct. Nor does it do what § 705 permits: a court cannot "postpone the effective date" of appointments completed months earlier. An order that unseats an already sitting committee member does not "preserve status or rights" but destroys the status quo.

The *Carson* conditions are satisfied. Gov't Br. 4–5. Plaintiffs' response reinforces them. The "serious, perhaps irreparable, consequence," *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981), is the ongoing disability itself: by Plaintiffs' own account, the government's recourse when vaccine policy must move is to "return to the district court to seek a modification." Resp.

Br. 48. An arrangement in which executive action requires judicial permission does not answer the irreparable-consequence showing. It *is* an irreparable consequence. The district court said as much, selecting its stay as "less drastic" than, "and thus preferable to, an injunction." PI Op. 44; App. 859. An order entered as the substitute for an injunction has the practical effect of one and is immediately appealable.[2] If styling universal relief as a "stay" defeated appellate review, the same label would launder it past *CASA*'s limits on equity. *See Abbott v. Perez*, 585 U.S. 579, 594–95 (2018) (practical effect of order controls over label).

Nor is the practical effect a matter of inference. Plaintiffs assure this Court that the order "leaves the Secretary free to take a range of possible actions" to reconstitute the committee. Resp. Br. 3–4. Yet in a recorded interview immediately after the stay order issued, counsel of record explained:

> INTERVIEWER: Does this decision stay any new appointments to ACIP?

---

[2] Plaintiffs assert that the district court "neither granted nor refused to grant an injunction." Resp. Br. 4. Both verbs are wrong: adjudicating a motion for a preliminary injunction and § 705 stays, the court refused the injunction—declining to bar ACIP from meeting—and "GRANTED in part" the rest. PI Op. 5 n.11, 44–45; App. 820, 859–60. Either verb is § 1292(a)(1)'s.

> COUNSEL: It does not. But *if we see additional appointments to ACIP, you can rest assured that we will act.*
>
> INTERVIEWER: You'll file a motion to basically stay that one and make it go in circles . . .
>
> COUNSEL: *Yeah. Yes.*[3]

Hence, this appeal. The government wants to reconstitute the ACIP and get it back to work. Plaintiffs tell this Court that appointing "legitimate, qualified, credible" members is a "simple solution[]" the Secretary has "refused." Expedition Opp. 3, 7. Their counsel elsewhere admits that if he does, "you can rest assured that we will act." That is superintendence—the "serious, perhaps irreparable, consequence" that *Carson* holds may be challenged now.[4]

---

[3] *See* https://www.youtube.com/watch?v=l6Hm3V4433U at 37:40–38:00 (last visited July 18, 2026) (interview of counsel of record for Plaintiffs-Appellees). The extra-record statements are offered on the question of jurisdiction, and the Court may take judicial notice of counsel's own public statements for that purpose. *See* Fed. R. Evid. 201(b)(2).

[4] *Calvary Chapel of Bangor v. Mills* is not to the contrary: it concerned the denial of a temporary restraining order—a denial that changed nothing and left the movant with other avenues of relief. 984 F.3d 21, 26–29 (1st Cir. 2020). The order here is months-long affirmative relief restraining the Executive Branch.

**II. Count II Fails at the Threshold: No Standing, No Agency Action, No Finality.**

    **A. Plaintiffs' Injuries Trace to Adoptions, Not Appointments—and the Appointment Stay Redresses None of Them.**

Standing must be established for each claim and each form of relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (standing "is not dispensed in gross"); *Davis v. FEC*, 554 U.S. 724, 734 (2008). Plaintiffs' brief defends injuries. It never connects them to the appointments or explains what the appointment stay redresses.

**1. Traceability.** Plaintiffs now rest traceability on *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100 (2025), arguing that it was "predictable" that reconstituting the committee would alter recommendations and reduce vaccine uptake. Resp. Br. 28. *Diamond* involved a single, predictable market response to binding regulation: reinstate the regulation, and the regulated parties comply. 606 U.S. at 117–18. The chain here runs through independent, discretionary *government* decisions: a committee must deliberate; a majority must vote; and the Director must then decide, alone, whether to adopt, 45 C.F.R. § 147.130(a)(1)(ii). That is not predictable third-party behavior. It is the attenuated chain that *FDA v. Alliance for Hippocratic*

*Medicine* holds insufficient. 602 U.S. 367, 380–83 (2024). *See also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–14 (2013). *Center for Biological Diversity v. EPA*, 168 F.4th 1164, 1176 (9th Cir. 2026), is farther afield still: the challenged action there was the agency's published recommendation itself.

If appointments are agency action traceable to every downstream policy disagreement, every association that disagrees with a policy becomes a roving commission over executive appointments—armed with standing, preliminary injunctions, and intrusive discovery styled as record compilation.

Count I proves the disconnect. On the district court's own holding, the January 5 Memo—the most consequential action here—was unlawful precisely because the Director *bypassed* ACIP entirely. A bypassed committee's composition caused nothing. Plaintiffs cannot both maintain that the Director ignored the committee and that the committee's membership produced their harm.

**2. Redressability.** Nowhere does the response explain what the appointment stay redresses that the stay of the adopted votes does not. The financial injuries Plaintiffs catalogue—unused doses, unreimbursed counseling, changed billing—flow from adopted recommendations, and

11

those adoptions are independently stayed. The district court itself saw the problem: vacating the committee's composition "would presumably wipe out the ACIP votes," which would "reinstate the guidance" Plaintiffs oppose. Dkt. 165, at 22; Suppl. App'x 1258; *see* Dkt. 165, at 36; Suppl. App'x 1272 (Plaintiffs' counsel: "That's what we're concerned about."). A remedy that at best returns Plaintiffs to the very actions they challenge redresses nothing.

**3. The "direct interest" theory.** Plaintiffs' remaining theory is that any organization with "a direct interest" in a committee's work has standing whenever fair balance is violated. Resp. Br. 30. But Plaintiffs have now disclaimed the only concrete version of that interest: they "do[] not claim" any "entitle[ment]" to a Work Group seat. Resp. Br. 31.

The contrast with *Wheeler* now appears in Plaintiffs' own filing. In *Wheeler*, the plaintiffs' members were the scientists the directive excluded — shut out of committee service and wanting in. These Plaintiffs disclaim any wish to be let in, so their asserted interest can only be in who *else* sits. An interest in the composition of a body one does not seek to join, divorced from concrete and redressable harm, is "an injury in law," not "an injury in fact." *TransUnion*, 594 U.S. at 427. Plaintiffs' pleadings confirm it: the injuries they

12

attribute to the committee itself—public meetings that are "a megaphone for spreading misinformation" that Plaintiffs must divert resources to "combat," Dkt. 245 ¶¶ 3, 161–62; App. 356–57, 437; Dkt. 139 ¶¶ 122–23; Suppl. App'x 250—are the self-directed counter-speech expenditures *Alliance for Hippocratic Medicine* forecloses.

The district-court decisions Plaintiffs collect (Resp. Br. 30)—*Cardona, Uejio, Barr*—rested on seat-and-voice injuries of the exact kind Plaintiffs renounce; and *Alliance for Hippocratic Medicine* postdates each. *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), remains "an unusual case" not to be extended, and an organization "cannot spend its way into standing." 602 U.S. at 394–96.[5]

---

[5] Plaintiffs' rhetoric outruns the record. An SCDM or individual-based recommendation does not "take away" coverage: the ACA mandates cost-free coverage of any immunization with an in-effect ACIP recommendation, 42 U.S.C. § 300gg-13(a)(2); *see* 45 C.F.R. § 147.130(a)(1)—as Plaintiffs' own brief concedes. Resp. Br. 47 n.33. The birth dose remained covered for every family that chooses it; the asserted injury is that physicians must discuss the vaccine, not that any patient lost coverage.

**B.** **An Appointment Is Not "Agency Action," and the Reconstitution Became "Complete" Only When the Court Stopped It.**

**1.** The APA does not reach everything an agency does. It reaches "agency action": "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof[.]" 5 U.S.C. § 551(13). Each category is a discrete, circumscribed exercise of regulatory power. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004).

The opening brief argued that an appointment to an advisory committee is none of them. Gov't Br. 26–27. Plaintiffs never respond. Their brief argues discreteness and finality at length, but it never says which § 551(13) category an appointment occupies—rule, order, license, sanction, or relief. Plaintiffs leave the argument unanswered because there is no answer. The operative complaint's own caption for Count II names its subject: not an action, but an entity—"The ACIP." Discreteness is necessary but not sufficient, *Norton*, 542 U.S. at 62–64, and a personnel selection fits no category the APA enumerates.

This Court has drawn the same line: the *Wheeler* directive was reviewable because it was an agency-wide policy, "clearly not individual hiring decisions committed to discretion[.]" 954 F.3d at 18 n.5.

Plaintiffs' effort to manufacture the missing legal consequences confirms the problem. The only "rights or obligations" their brief identifies are the *appointee's* own: the right to attend meetings and vote, and duties of financial disclosure, outside-employment limitation, and uncompensated service. Resp. Br. 35. That is finality borrowed from someone else. The legal consequences *Bennett v. Spear* requires run outward—to parties whose legal position the action alters. 520 U.S. 154, 178 (1997). Consequences internal to the employment relationship are ordinary personnel administration, which no court reviews under the APA.

The theory also proves too much. Every federal appointment confers duties on the person appointed—an oath, ethics rules, disclosure obligations. On Plaintiffs' theory, every appointment of every official, across roughly a thousand federal advisory committees and beyond, is final agency action reviewable at the suit of any interested bystander. The APA does not convert the Executive Branch's staffing decisions into a docket.[6]

---

[6] Plaintiffs assert that the government "does not contest" that each appointment marks a consummation. Resp. Br. 35. It does, and it did: appointments "are the beginning of a deliberative process, not its consummation." Gov't Br. 14.

Plaintiffs' finality authority confirms the point. *Harper v. Werfel* applied *Bennett* to hold even a formal IRS summons non-final: a "preliminary investigative step, far upstream" of any enforcement action. 118 F.4th 100, 116 (1st Cir. 2024). Appointments sit farther upstream: before deliberation, before any vote, before the one decision with legal effect—the Director's adoption. If the investigative step in *Harper* was non-final, staffing that precedes an advisory body's deliberation cannot be final agency action.

Plaintiffs' counsel said the same below: "[w]e wouldn't be challenging an action taken by the ACIP if it hadn't been adopted by the CDC [D]irector because it doesn't become a final agency action." Dkt. 260, at 51; App. 494. And their operative complaint pleads the same: the three challenged votes became "final agency actions" upon CDC adoption. Dkt. 245 ¶ 170; App. 438. Just so. Finality attaches at adoption—and the appointments sit two steps before the vote that precedes it.

**2.** Plaintiffs principally respond that the government raises all of this "for the first time on appeal." Resp. Br. 33. The record refutes that. The government argued that Count II "amounts to a programmatic challenge to HHS's vaccine policy writ large that is not cognizable under the APA"—a reviewability objection by its terms—and invoked Rule 12(h)(2): objections

16

to final agency action are "a species of failure to state a claim" that "may be raised at any time through trial." Dkt. 272, at 24 & n.6; App. 667. Plaintiffs themselves briefed waiver below, Dkt. 229-1, at 31–32; App. 197–98, and the government responded, Dkt. 232, at 21; App. 258.

Plaintiffs' course of litigation defeats any claim of unfair surprise. Their positions related to finality have never stood still:

| Date | Plaintiffs' position |
|---|---|
| **Nov. 5, 2025** | Third Am. Compl. labels "Reconstitution of the ACIP" a "justiciable final agency action[]"—no instrument, no date; twelve members seated, appointments ongoing. |
| **Dec. 17, 2025** | "[T]he facts are developing every day"; "the administrative record continues to build." Dkt. 165, at 4–5; Suppl. App'x 1240–41. |
| **Jan. 13, 2026** | Two more members appointed. |
| **Feb. 9, 2026** | The government has "waived" any finality objection. Dkt. 229-1, at 31–32; App. 197–98. |
| **Feb. 17, 2026** | Operative complaint: Count III pleads finality expressly—CDC adoption dates, "thus making all of these votes final agency actions." Dkt. 245 ¶ 170; App. 438. Count II pleads none. *Id.* ¶¶ 156–68. |
| **Feb. 27, 2026** | Two more members appointed; four seats remain vacant. |
| **Mar. 4, 2026** | To avoid *Braidwood* issues, the ACIP becomes "a purely advisory committee" whose recommendations are "not self-effectuating"; it "neither makes nor implements government decisions or policy"; it "is not the final decider." Dkt. 283, at 25, 27; App. 753, 755; Dkt. 276, at 1, 4–5; App. 710, 713–14. |
| **Mar. 16, 2026** | The district court stays thirteen appointments. |
| **July 16, 2026** | "As a practical matter, the reconstitution is complete." Resp. Br. 37. |

The sequence speaks for itself. A claim pleaded with no identified final action became "developing every day" in December, a waiver argument in February, non-final again in March to avoid *Braidwood*, and "complete" in July—four months after procuring the order that halted it. The only consummating event between "developing every day" and "complete" is the injunction itself. The finality Plaintiffs assert was manufactured by the remedy they procured: they sued over an action they told the district court was still unfolding, obtained an order halting it mid-course, and now cite the halt as the consummation.

Plaintiffs' theory reduces to this: the reconstitution became final when the district court stopped it. To state the position is to refute it. The order's own boundary proves the point. The court expressly declined to stay the two appointments made February 27 because they "post-date the filing of this motion," staying only the thirteen made before it. PI Op. 29 n.46; App. 844. No agency-side line separates the stayed from the spared—same official, same process, same alleged defects. The boundary is *a filing date*. The action did not consummate; it was interrupted.

The pleadings agree: Count II was ripe at twelve members, ripe again at fourteen, with two appointments and four vacancies still to come—a claim

that matures anew at each pleading challenges a program, not an action—and counsel promised the program: "we will continue to be challenging final agency actions," because the facts "develop every day." Dkt. 178, at 31 (Jan. 12, 2026 Status Conf. Tr.). *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 (1990).

Forfeiture fails for the same reason: it assumes a fixed target. The government was asked to align two moving dots. The claim moved—amended again in the middle of preliminary-injunction briefing, over the government's objection, Dkt. 233; App. 67, to absorb the newest appointments. And the argument moved—the month after alleging forfeiture, Plaintiffs recast the committee as "purely advisory," its recommendations "not self-effectuating," to steer clear of *Braidwood*. The government joined issue on the claim as Plaintiffs described it; what it could not do was pin an objection to a particular final action Plaintiffs never named, or contest, in December, the finality of appointments, or a reconstitution, not yet made. Forfeiture requires a fixed target, and Plaintiffs never held one still.

Plaintiffs' own authority holds that the APA's finality requirement is not jurisdictional, *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 33 (1st Cir. 2007)—it is an element of Plaintiffs' claim, theirs to plead and, on a

preliminary injunction, clearly show, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), and a defendant does not forfeit an element of the plaintiff's claim. They argued waiver instead. Nor could an objection to the appointment stay's predicate have been forfeited before that relief existed: no party proposed it, Dkt. 183-1; App. 141, and § 705 authorizes stays only of reviewable agency action. *Supra* Part I.

Regardless, this Court reaches new defenses where the question is purely legal, record-ready, and touches "matters of great public moment[.]" *Nat'l Ass'n of Social Workers v. Harwood*, 69 F.3d 622, 627–28 & n.6 (1st Cir. 1995) (exception ensures courts do not "poach on preserves that the Constitution reserves to other forms of oversight"). *Harwood*'s defendants said nothing below. Here, the government joined issue in December.

**3.** Plaintiffs' own concessions strand Count II on the wrong side of *Wheeler*'s line. Their brief confirms that "Plaintiffs have not challenged the Secretary's mass firing of all the ACIP members." Resp. Br. 48–49. The June 9 termination and its public announcement are the only events in this case that even resemble a *Wheeler*-style directive—dated, published, categorical. They are unchallenged. Nor is the announcement itself the missing instrument: it barred no one from service, set no eligibility criteria, and

20

carried no legal consequence of its own. What remains is precisely what *Wheeler* placed beyond APA review: a series of individual selections, made one by one over many months.

*Biden v. Texas* does not help. There, the agency issued a definitive written policy instrument, implemented in later steps. 597 U.S. 785, 793 (2022). Here, no instrument at all.

Plaintiffs warn that on the government's reading, agencies could "evade *Wheeler* by doing through appointments what they could not do through a written directive." Resp. Br. 36–37. How so? Where an agency acts through a directive, as in *Wheeler*, the directive is reviewed; and where it acts through individual selections and later relies on the committee's output, that reliance is reviewed on challenge to the downstream final action. Had the Secretary adopted a written policy that no industry-funded scientist may serve, that policy would have been reviewable the day it issued, however implemented. No conduct escapes review. What Plaintiffs seek is not review but a third channel the APA does not contain.

And consider what Plaintiffs' theory does to *Wheeler*. *Wheeler* holds that FACA is enforceable through the APA. "Through the APA" means through the APA's limits of § 551(13), *Bennett*, and *Norton*. If a plaintiff could

satisfy those limits by relabeling a series of personnel selections under the noun "reconstitution" and calling the noun agency action, that holding would mean nothing: FACA would be enforceable around the APA, not through it. *Lujan v. National Wildlife Federation* forecloses the move: the "land withdrawal review program," a name for the agency's continuing operations, was not "agency action" at all. 497 U.S. at 890. A label is not a rule, order, license, sanction, or relief.

**4.** Consider what review of individual appointments or "reconstitution" entails. An action with no instrument and no closed record must be reviewed on *some* record, and the only candidate is selection deliberations—vetting files, candidate comparisons, internal communications. Plaintiffs' counsel described the posture below: this is "not a closed administrative record-type case"; the record "continues to build." Dkt. 165, at 4–6; Suppl. App'x 1240–42. Record litigation continues even now. Resp. Br. 44 n.31.

The Supreme Court has warned in this precise context—a FACA dispute—against converting judicial review into civil discovery aimed at the deliberations of high-ranking executive officials. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 385–90 (2004). A theory of "agency action" whose

administration requires ongoing discovery into the exercise of appointment authority is not a construction of the APA. It is a warrant for supervision the APA nowhere grants and *Cheney* and the Constitution do not tolerate.

That, in the end, is what Count II is actually about. Plaintiffs never seriously dispute that the stays of the adopted actions redress every concrete harm they allege. What Count II and the appointment stay add is not redress but control: judicial supervision of Executive Branch staffing, and judicially sanctioned discovery into agency deliberations.

## III.   *Wheeler* **Authorizes Record Review, Not Résumé Review.**

Identify the agency action, and the standard of review follows. *Wheeler* is *State Farm* review: the court examined a decision, on a record, against a stated rationale, asking whether the agency acknowledged the directive's effect on balance and "offered [a] rational reason" for it. 954 F.3d at 20. *See Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). That review was possible because there was an action to review.

Plaintiffs gave the court appointments instead—no reviewable record of a final decision. The court was left to assemble a record itself, reading résumés, building a record from the committee's website, and grading each

member against criteria of its own selection. PI Op. 28–34; App. 843–49. Member-by-member credentialing is what remains when nothing before the court is reviewable under *State Farm*. Under the correct standard, review asks whether the agency transgressed FACA's outer boundaries—a categorical exclusion, a roster facially irreconcilable with the charter—measured on a fixed record against the agency's stated rationale. Nothing of that kind occurred, or was found, here.

Plaintiffs' focus on the administrative record obscures the subject of this appeal—and is revealing. This is a *preliminary-injunction* appeal; there was no administrative record to review—not because the government withheld one, but because, as Plaintiffs admitted in December, Dkt. 165, at 4–6, appointments generate no closed record at any stage. Their complaint that the government delayed producing a record that, in their counsel's words, "continues to build," concedes the defect rather than curing it.

Plaintiffs respond that the district court merely "appli[ed] the agency's own standards"—the Membership Balance Plan and the outreach regulation—citing *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996). Resp. Br. 39–42. *Yang* concerned settled adjudicative practice. The MBP is an internal, executive-amendable staffing document, and the requirement to maintain

one has since been rescinded, 90 Fed. Reg. 58,408 (Dec. 16, 2025), just as the outreach regulation has been revised. PI Op. 31 n.57, 32 n.58; App. 846–47.

Departure from a nonbinding internal plan is not a FACA violation. FACA's test is the fairness of the composition that results, not the purity of the process that produced it. Plaintiffs relabel the district court's method—"application of the agency's own standards in the most generous possible way[,]" Resp. Br. 42. But they never defend the member-by-member footnotes themselves. Nor can they explain a stay that reached members the court never discussed and never found unqualified.

The burden inversion stands unrebutted as well. A preliminary-injunction movant must make a "clear showing" on every element. *Winter*, 555 U.S. at 22. Without a record, the court was left to find imbalance from the *absence* of evidence—reciting, member by member, that "there is no evidence in the record" of relevant expertise—while acknowledging that "there may be evidence to demonstrate" otherwise. PI Op. 29–31 & n.56; App. 844–46. An evidentiary gap of the movant's own making is a reason to deny preliminary relief, not a basis to grant it.

Last, Plaintiffs say the separation-of-powers point was forfeited and underdeveloped. Resp. Br. 44. But the government does not press a

freestanding constitutional claim. Rather, it provides constitutional avoidance as guideposts to reading *Wheeler* and the APA. Arguments in support of a preserved position may be developed on appeal. The argument is that the district court's extension of *Wheeler* — from outer-boundary review of a directive to judicial credentialing of individual appointees — creates an Article II problem — and the reading that avoids it is also the correct one.

## IV. The Remedy Is Unprecedented, Untailored, and Untethered to Any Plaintiff's Injury.

**1.** The district court did not stop at a fair-balance determination. Fair balance is a property of a committee's composition at a point in time.

No individual appointment is "unbalanced." Yet the court stayed *every* challenged appointment on the theory that "the appointment process, in general, and thus the full committee, was tainted." PI Op. 43–44; App. 858–59. A determination about balance became an order about people. Nor do the order's disclaimers match its operation: the court declared it "would be inappropriate" to "enjoin ACIP from meeting," yet entered a stay whose express object was that "ACIP as currently constituted cannot meet[.]" PI Op. 44; App. 859. Even under Plaintiffs' preferred abuse-of-discretion standard, that sequence cannot stand: the stay accomplishes the very result

the court had just called inappropriate. Relief must be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs[,]" *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979), and a stay that leaves no functioning committee does not cure an imbalance but inflicts a different and greater one.

**2.** The equitable defects escalate. Relief must be no broader than necessary. *Califano*, 442 U.S. at 702. It must have historical antecedent. *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999). Plaintiffs cite no case, from any court in any era, staying or vacating an individual appointment to remedy a fair-balance violation. And it must be tethered to complete relief for the parties. *CASA*, 606 U.S. at 851.

The appointment stay fails all three. This order does not merely extend relief to nonparties but awards relief that benefits no party at all. Plaintiffs' finality theory is novel, and their remedy is unprecedented. Novelty at both ends of an APA claim confirms that Count II leaves the statute behind.

The form of the relief tells the same story. Plaintiffs sought § 705 stays of the downstream Challenged Actions and an injunction against future meetings; no party sought a stay of appointments. PI Op. 5 & n.11; App. 820. The court selected that form itself, as the "less drastic" substitute for an

injunction. *Supra* Part I. The injunction this relief replaced would have had to answer *CASA*'s complete-relief limit. Styled as a § 705 stay, it never confronted that limit—and the label now serves a second purpose in this Court, deployed to defeat appellate jurisdiction. *Supra* Part I.

The mismatch between harm and remedy makes the point independently. The irreparable-harm finding below—diversion of organizational resources, PI Op. 36; App. 851—is not before this Court. But the relief erected on it is. And nothing in that finding connects to unseating thirteen appointees: a court concerned with what a reconstituted committee might someday vote—and a Director might adopt—reviews the adoption when it occurs, on an actual record, redressing an actual injury. It does not suspend the committee's membership in the meantime.

**3.** Reversal does not "reinstate" anything. Plaintiffs warn that if the government prevails, the Secretary could "simply reinstate the appointments previously stayed." Resp. Br. 3. The argument assumes its conclusion. Reversal restores the Executive Branch's discretion, not any particular roster. Nothing suggests the Secretary will reseat the last roster rather than exercise the restored authority mindful of FACA's fair-balance requirement—enforceable on review of the committee's downstream

28

product, and, as the district court put it, "an agency's job and prerogative" in the first instance. PI Op. 44; App. 859. What reversal ends is not fair-balance compliance but ongoing judicial supervision of the roster.

**4.** Judicial estoppel fails on its own elements. Plaintiffs say the government "proposed" appointment stays below and cannot now challenge "a variant" of its own remedy. Resp. Br. 46 (citing *Sexual Minorities Uganda v. Lively*, 899 F.3d 24 (1st Cir. 2018)). The government never proposed a remedy that stayed the ACIP out of existence. In any event, estoppel requires that the earlier position succeeded. *Lively*, 899 F.3d at 33–34. Here, the opposite happened. The government's submission was an express alternative to keep the ACIP functioning: *if* the court found an imbalance, it should stay "only as many appointees as would be necessary" to cure it. Dkt. 232, at 51; App. 288. The court rejected that tailoring and stayed all thirteen, *including members it never found wanting.*

Plaintiffs add that the government never "flesh[ed] out" how a narrower remedy would work. Resp. Br. 46 (citing *Doe v. Trump*, 157 F.4th 36, 82 (1st Cir. 2025)). The record answers: stay only as many appointments as necessary to cure any imbalance, and let the Secretary finish filling the four open seats. Dkt. 232, at 32, 51; App. 269, 288. And the party seeking

relief, not the party restrained, bears the burden of justifying its scope. *Califano*, 442 U.S. at 702.

An order broader than the fallback the government offered in the alternative is not a "less intrusive variant."

**5.** *Braidwood* is not a removal-only case. Resp. Br. 48–49. Appointment and removal are two faces of the same supervisory power. A Secretary who may remove members but whose appointments a court holds in abeyance cannot supervise the committee at all. *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 760–62 (2025) (supervision of an advisory body runs through the powers to appoint, remove, and block recommendations). Plaintiffs' observation that the *Braidwood* Task Force was not subject to FACA cuts against them: FACA committees exist "solely for advisory functions," 5 U.S.C. § 1008(b) — a weaker case, not a stronger one, for judicial structural control. Nor does the government dispute that Congress may prescribe qualifications for advisory bodies. Resp. Br. 49. The question is who applies them to individual candidates, and *Braidwood* answers it: supervision of an advisory body's membership belongs to the Secretary. And Plaintiffs' non-challenge to the mass termination concedes the supervisory authority at issue. *Accord* Dkt. 165, at 29; Suppl. App'x 1265 ("the Secretary does have

discretion to appoint to an advisory committee, also to terminate"). The district court felt the same difficulty. Dkt. 283, at 23; App. 751 ("struggling with how to square that with what the Supreme Court said in *Braidwood*").

**6.** Plaintiffs' flu-season assurances confirm the point. The assurances rest on materials outside the record—agency web pages, a price list, a trade association's press release. Resp. Br. 47–48 & nn.32–34. Taken on their own terms: national vaccine coverage now depends in part on an insurers' association's voluntary pledge through 2027—a stopgap for a disabled statutory process.

A committee supervised by Article II now operates by leave of Article III. And under Plaintiffs' own theory, every future appointee is separately litigable, before the same court, under no articulated standard. That is conservatorship, not judicial review.

*       *       *

The proper remedy remains the ordinary one: set aside the challenged final actions, if warranted, and remand for the agency to proceed properly. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). That relief redresses every concrete injury Plaintiffs identify, without judicial staffing of the Executive Branch.

**CONCLUSION**

At bottom, the government seeks two things from this Court: release of the appointment power from ongoing judicial supervision, and clarification that this is an APA case, not a roving commission into the files of Executive Branch officers.

Reversal forfeits no safeguard. The pre–January 5 schedule remains in effect; the stays of the adopted actions remain in place; FACA's fair-balance requirement remains binding law; and any future adoption is subject to immediate APA review, on a record, the day it issues. Reversal does not make vaccine policy unreviewable. It returns review to where the APA locates it.

The district court confronted a novel claim on a compressed schedule, amid an urgency Plaintiffs have since disclaimed. The error lies in the framework they pressed, not the court's care. For these reasons and those in the opening brief, the Court should reverse the order below insofar as it stays the thirteen appointments, and remand, subject to the interim treatment of the stayed votes described in the opening brief.

Respectfully submitted,

STANLEY E. WOODWARD, JR.
*Associate Attorney General*


 */s/ Matthew C. Zorn*

MATTHEW C. ZORN
*Senior Counsel to the Associate
   Attorney General*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*

July 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,487 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

*/s/ Matthew C. Zorn*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Matthew C. Zorn*