# THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

AMERICAN ACADEMY OF PEDIATRICS, et al.,

Plaintiffs-Appellees,

v.

ROBERT F. KENNEDY JR., et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Massachusetts

## BRIEF OF AMICI CURIAE STATES OF ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, MAINE, MARYLAND, MICHIGAN, MINNESOTA, NEW JERSEY, NEW MEXICO, OREGON, RHODE ISLAND, AND WISCONSIN; AND JOSH SHAPIRO, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE COMMONWEALTH OF PENNSYLVANIA SUPPORTING AFFIRMANCE OF DECISION BELOW IN FAVOR OF APPELLEES

Kristin K. Mayes
 *Arizona Attorney General*
2005 N. Central Ave.
Phoenix, AZ 85004
(602) 542-3333
*Counsel for State of Arizona*
*[Additional counsel listed on signature page]*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.............................................................................ii

INTEREST OF AMICI CURIAE.....................................................................1

INTRODUCTION ........................................................................................2

ARGUMENT.................................................................................................5

I.      Defendants waived or forfeited their nonfinality arguments................5

II.     The unlawful reconstitution of ACIP was final action that
had immediate and pervasive legal consequence for states. .................8

      A.     Administrative action does not lack finality because it
is piecemeal or erratic. ........................................................8

      B.     Legal consequences flowed from the action because
state legal codes and public health systems are tethered
to ACIP's expertise..............................................................13

      C.     Defendants continue to violate FACA in multiple
respects................................................................................18

III.    The ACIP reconstitution is reviewable even if it was an
intermediate action. .............................................................................22

CONCLUSION ...........................................................................................23

CERTIFICATE OF COMPLIANCE ............................................................27

CERTIFICATE OF SERVICE .....................................................................28

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Lab'ys v. Gardner*,
387 U.S. 136 (1967)............................................................................10

*Accrediting Council for Indep. Coll. & Schs. v. DeVos*,
303 F. Supp. 3d 77 (D.D.C. 2018)....................................................23

*Agatha v. Trump*,
151 F.4th 9 (1st Cir. 2025) ................................................................21

*Am. Acad. of Pediatrics v. Kennedy*,
823 F. Supp. 3d 141 (D. Mass. 2026) ................................................9

*Arizona v. Kennedy*,
3:26-cv-01609 (N.D. Cal.)...............................................................1, 6

*Bennett v. Spear*,
520 U.S. 154 (1997)................................................................. 8, 12, 13

*Ctr. for Biological Diversity v. Haaland*,
58 F.4th 412 (9th Cir. 2023)..............................................................13

*F.C.C. v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009)............................................................................18

*F.T.C. v. Standard Oil Co. of Cal.*,
449 U.S. 232 (1980)............................................................................23

*Marcum v. Salazar*,
694 F.3d 123 (D.C. Cir. 2012)..........................................................5, 7

*New York v. Trump*,
133 F.4th 51 (1st Cir. 2025) ................................................. 10, 11, 12

*New York v. Kennedy*,
155 F.4th 67 (1st Cir. 2025) ..............................................................20

*New York v. Kennedy*,
789 F. Supp. 3d 174 (D.R.I. 2025)................................................11

*Oregon v. Kennedy*,
No. 6:25-cv-02409-MTK (D. Or. Apr. 18, 2026) .................................11

*Rhode Island v. Trump*,
810 F. Supp. 3d 283 (D.R.I. 2025)........................................... 10, 11

*Student Loan Mktg. Ass'n v. Riley*,
104 F.3d 397 (D.C. Cir. 1997)................................................12

*Union of Concerned Scientists v. Wheeler*,
954 F.3d 11 (1st Cir. 2020)........................................... 4, 10, 22

*United States v. Spruill*,
808 F.3d 585 (2d Cir. 2015) ..................................................7

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
578 U.S. 590 (2016)....................................................... 10, 12

*Waterkeeper All. v. EPA*,
140 F.4th 1193 (9th Cir. 2025)...............................................12

*Yaman v. U.S. Dep't of State*,
634 F.3d 610 (D.C. Cir. 2011)................................................22

**Statutes**

5 U.S.C. § 704........................................................ 4, 22, 23

5 U.S.C. § 1004(b).........................................................9, 21

42 U.S.C. § 217a(a) ..........................................................15

42 U.S.C. § 243(a) ...........................................................14

42 U.S.C. § 1396a(a)(62) .....................................................17

42 U.S.C. § 1396s(a)(1)(A)....................................................17

42 U.S.C. § 1396s(c)(2)(B)(i)................................................17

A.R.S. § 32-1974(A)..................................................................16

Del. Code tit. 14, § 131 ...........................................................15

Minn. Stat. § 62M.07, subd. 2(4) ...........................................16

Minn. Stat. § 62Q.46, subd. 1(2)............................................16

**Regulations and Rules**

6 CCR 1009-2(II)......................................................................16

27 De. Reg. 863 (April 2026)...................................................15

41 C.F.R. § 102-3.60(b)(3) (May 20, 2024 ed.)......................18

216 R.I. Code R. § 30-05-3.5.2(A) ..........................................16

Fed. R. App. P. 29(a)(2)...........................................................2

**Other Authorities**

73A C.J.S. Public Administrative Law and Procedure § 497 ..........................23

2025 N.M. Laws, 1st Spec. Sess., ch. 5, §§ 1–15 .................16

*Aligning United States Core Childhood Vaccine Recommendations with Best Practices from Peer, Developed Countries,* Presidential Memorandum (Dec. 5, 2025) ...................................................................20

Ass'n of State and Territorial Health Offs., *Impact of the Advisory Committee on Immunization Practices Recommendations on State Law* (June 23, 2025) ...............................................................13

Ctrs. for Disease Control and Prevention, *Advisory Committee on Immunization Practices Policies and Procedures* (June 2022)..........................19

Ctrs. for Disease Control and Prevention, *Membership Balance Plan* (2024)...9, 19

Jean Clare Smith et al., *History and Evolution of the Advisory Committee on Immunization Practices – United States, 1964–2014*, MMWR Morb. Mortal. Wkly. Rep. 2014; 63(42) ......................................................................8

*Realigning United States Core Childhood Vaccine Recommendations with Best Practices from Peer, Developed Countries*, Executive Order (May 29, 2026) ..........................................................................................20

Robert F. Kennedy, Jr., *RFK Jr.: HHS Moves to Restore Public Trust in Vaccines*, Wall St. J. (June 9, 2025) ........................................................... 11, 17

**INTEREST OF AMICI CURIAE**

Amici are the States of Arizona, California, Colorado, Connecticut, Delaware, Maine, Michigan, Maryland, Minnesota, New Jersey, New Mexico, Oregon, Rhode Island, and Wisconsin; and Josh Shapiro, in his official capacity as Governor of Pennsylvania. Amici are responsible for administering public health systems and containing the transmission of vaccine-preventable diseases. Amici are also plaintiffs in *Arizona v. Kennedy*, No. 3:26-cv-01609-VC, a case pending in the Northern District of California that challenges three of the same actions that the plaintiffs in this case challenged: the reconstitution of the Advisory Committee on Immunization Practice ("ACIP"), at issue in this appeal; the December 2025 hepatitis B recommendations; and the January 2026 changes to the childhood immunization schedule. Various Amici are also plaintiffs in a range of other litigation against the current federal administration, in which the administration has defended its actions as lacking finality under the Administrative Procedure Act ("APA").

Amici therefore have deep interests in opposing the unlawful degradation of public health systems, as well as in promoting the reasoned application of the APA's finality standard. As states, Amici are entitled to

1

file this brief as of right. Fed. R. App. P. 29(a)(2). No part of this brief was authored by any party's counsel, and no person or entity other than Amici funded its preparation or submission.

**INTRODUCTION**

Until recently, ACIP was populated with some of the nation's leading immunologists and public health experts, with new members appointed via an exacting vetting process. Amici have therefore relied on ACIP for critical vaccine guidance for decades. In many states, ACIP's recommendations govern the standards for school admission, immunization tracking, and other bedrocks of the public health system.

Against this backdrop, Defendants' opening brief asks the Court to accept the proposition that disbanding ACIP via tweet and reconstituting it with vaccine skeptics hand-selected by Health and Human Services ("HHS") Secretary Robert F. Kennedy, Jr., without regard to the selection procedures required by law, has "no legal consequences." That could not be more wrong, and it is not a question of "policy preference[]," as Defendants dismissively argue.

If Secretary Kennedy had merely preferred *different* subject-matter experts, he could have solicited applications, provided Federal Register

2

notice, and consulted with ACIP's Steering Committee—i.e., followed standard, requisite procedure to ensure that ACIP continued to perform its statutory public-health function. He did not. And then, if ACIP had intended to continue acting as a normal scientific body performing its intended function, it could have relied on its Working Groups and established scientific frameworks to make new recommendations. It did not.

Thus, separate from any specific actions that the reconstituted ACIP has taken, there is overwhelming evidence that its impairment as a lawfully constituted, scientifically credible body renders Amici's continued reliance on it dangerous and untenable—a matter of grave legal (and public health) consequence. Some Amici have therefore already convened emergency legislative sessions and undertaken other urgent action to amend their legal codes to remove or minimize reliance on ACIP. In some other states, it is not feasible to do so, and they are left with statutory reliance on an "ACIP" that—if the reconstitution stands—no longer exists in a reliable form.

Nor are Defendants subtle about the reconstituted ACIP's politicized mission. As they told this Court in their motion to expedite this appeal, a recent Executive Order "demand[s] ACIP action" on the childhood immunization schedule. No legitimate, properly constituted scientific panel

would view itself as a conduit for a political demand to impose a predetermined result.

Defendants failed to raise nonfinality below and therefore waived this issue on appeal. Regardless, this Court should affirm the district court's decision that the ACIP reconstitution is reviewable final action and that it must be enjoined.

This Court already held in *Union of Concerned Scientists v. Wheeler* that the Federal Advisory Committee Act's ("FACA") "fair balance and inappropriate influence provisions are reviewable under the APA." 954 F.3d 11, 20 (1st Cir. 2020). Defendants' conduct is far more egregious than the conduct in *Wheeler*—in substance, they destroyed fair balance and imposed inappropriate influence through backroom maneuvering, rather than by written directive, as in *Wheeler*. Abject lawlessness does not negate finality. And in any event, it is undisputed that the CDC's later adoption of the reconstituted ACIP's recommendations was final agency action—so the reconstitution is reviewable under 5 U.S.C. § 704 even if it could initially be construed as "intermediate" action.

**ARGUMENT**

**I.  Defendants waived or forfeited their nonfinality arguments.**

Amici submit this brief primarily to discuss the far-reaching legal consequence of ACIP's reconstitution and to oppose any conception of finality that would permit—and incentivize—egregious departure from requisite administrative process.

But to start, "a 'finality' objection must be raised by the agency" in the lower court "in order to be preserved." *Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012) (holding that the government "forfeited the objection" to finality where it "never raised finality with the District Court"). Because the Court need not reach the merits of Defendants' finality arguments if Defendants' waived or forfeited the issue, Amici address this threshold question in one limited respect.

Defendants tacitly concede that they did not dispute the reconstitution's finality in the district court, but they argue that they could not have done so because they did not understand the "appointments themselves" to be at issue until "the court granted relief running against them." Br. at 35 n.3; *see also id.* at 27 n.1 (asserting that "[a] party cannot waive an argument against relief no one requested").

Contrary to Defendants' characterization of the record below, the *AAP* Plaintiffs expressly put the finality of ACIP's reconstitution at issue by arguing that "[t]he terminations of all 17 sitting members of [ACIP] … and replacement of them" was "final agency action[]" that "violate[d] the APA because [the appointments] were not made in accordance with FACA." 1/26/26 Mot. for Prelim. Inj. ("PI Mot.") at 1–2, 34–42. Thus, irrespective of whether the remedy for the unlawful reconstitution was to enjoin ACIP's meeting or to enjoin the reconstitution itself, finality *was* at issue.

Defendants' characterization of the lower court proceeding in this Court is also inconsistent with their representations about it to the district court in *Arizona v. Kennedy.* In *Arizona*, the Plaintiff States unequivocally alleged that ACIP's reconstitution violated the APA and asked the court to "[e]njoin, vacate, and set aside the appointment of the Kennedy Appointees." *See* Complaint at ¶¶ 360–82, Prayer for Relief ¶ iv, 3:26-cv-01609 (N.D. Cal. Feb. 24, 2026), Dkt. 1. And Defendants—represented by the same trial court counsel as in this case—have repeatedly and consistently avowed to the court there that the claims in the two cases are "identical." *See* Joint Case Status Report at 5, *Arizona*, 3:26-cv-01609 (May 22, 2026), Dkt. 69 ("The AAP plaintiffs assert the same claims against the same actions as

Plaintiffs here."); *id.* at 10 ("[I]t would be inefficient to litigate this case before the district court in *AAP* resolves the identical claims presented there."); Stip. for Entry of Protective Order at 2 (June 12, 2026), Dkt. 74 (*AAP* "challenges the same actions on the same grounds"); Defs.' Mot. to Dismiss for Lack of Subject-Matter Jurisdiction at 6 (June 25, 2026), Dkt. 77 ("The same actions are being challenged on the same grounds in *American Academy of Pediatrics v. Kennedy*, No. 1:25-cv-11916-BEM (D. Mass.).").

Defendants, moreover, *did* argue below that their unilateral promulgation of the January 2026 childhood immunization schedule was nonfinal action. Opp'n to PI at 13–15. Thus, their decision not to dispute the reconstitution's finality indicates an intentional litigation choice, not an oversight—i.e., waiver, not forfeiture. *See, e.g., United States v. Spruill*, 808 F.3d 585, 596 (2d Cir. 2015) (courts have no discretion to entertain waived issues). In either event, Amici agree with Plaintiffs that Defendants' failure to raise this issue should preclude them from raising it for the first time on appeal. *Marcum*, 694 F.3d at 128.

**II.** **The unlawful reconstitution of ACIP was final action that had immediate and pervasive legal consequence for states.**

If not waived or forfeited, Defendants' finality arguments are unavailing on the merits. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (action is final if it (1) "mark[s] the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow") (cleaned up).

Defendants cannot rely on their own inadequate administrative process to suggest that they did not consummate any action (or that the reconstitution is not "agency action" at all). And destroying the nation's preeminent vaccines panel has profound legal consequence.

**A.** **Administrative action does not lack finality because it is piecemeal or erratic.**

ACIP exists to advise federal health leaders on "the most effective application in public health practice of specific preventive agents … [for] communicable disease control." Jean Clare Smith et al., *History and Evolution of the Advisory Committee on Immunization Practices – United States, 1964–2014*, MMWR Morb. Mortal. Wkly. Rep. 2014; 63(42), https://www.cdc.gov/mmwr/preview/mmwrhtml/mm6342a5.htm.

ACIP was established under the Federal Advisory Committee Act ("FACA") and is therefore subject to FACA's requirements. As Defendants acknowledge, a FACA committee must be fairly balanced. It must also not be "inappropriately influenced by the appointing authority or by any special interest." 5 U.S.C. § 1004(b)(2)–(3).

Until June 8, 2025, ACIP was populated with leading medical scholars and public health experts, in accordance with the mandate under its Federal Advisory Committee Membership Balance Plan ("MBP"). *See* Ctrs. for Disease Control and Prevention, *Membership Balance Plan* at 2 (2024) (directing that voting members be selected based on expertise in the field of immunization practices, multi-disciplinary expertise in public health, expertise in the use of vaccines and immunologic agents, and related criteria). By mid-September, ACIP was dominated by unqualified members who were not selected in accordance with ACIP's longstanding procedures and who had little or no experience related to the study or use of vaccines, but who did share Secretary Kennedy's outlier views about vaccines. *See Am. Acad. of Pediatrics v. Kennedy*, 823 F. Supp. 3d 141, 166–68 (D. Mass. 2026); Complaint at ¶¶ 75–82, *Arizona,* No. 3:26-CV-01609 (Feb. 24, 2026), Dkt. 1.

In *Wheeler*, this Court held that "FACA's fair balance and inappropriate influence provisions are reviewable under the APA." 954 F.3d at 20. Defendants try (at 31) to distinguish *Wheeler* on the basis that it involved a directive barring grant recipients from committee service, not "individual appointments," but this purported distinction cuts decisively against them.

Taken at face value, Defendants' position is that "a single, dated, published policy" by Secretary Kennedy that fired ACIP's membership and established vaccine skepticism as a litmus test for new members *would be* reviewable, while "a rolling series of discretionary appointments" is not reviewable. *See* Br. at 32. In effect, Defendants are urging an APA loophole that would render actions unreviewable if they are sufficiently (and intentionally) abnormal, erratic, or ad hoc.

But "in reviewing the record, a court is not required to exhibit a naiveté from which ordinary citizens are free." *New York v. Trump*, 133 F.4th 51, 69 (1st Cir. 2025) (cleaned up). Instead, "[c]ourts are to apply the 'finality' requirement in a 'flexible' and 'pragmatic' fashion." *Rhode Island v. Trump*, 810 F. Supp. 3d 283, 302 (D.R.I. 2025) (citing U.*S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016) and *Abbott Lab'ys v. Gardner*, 387 U.S. 136,

149–51 (1967)). Therefore, when presented with nonfinality arguments similar to those Defendants have made here, courts across the country have consistently rejected them. *See, e.g., New York*, 133 F.4th 51 at 68–69 (rejecting nonfinality argument in connection with federal funding freezes); *Rhode Island*, 810 F. Supp. 3d at 302–03 (rejecting nonfinality argument in connection with dismantlement of federal agencies); *Oregon v. Kennedy*, No. 6:25-cv-02409-MTK, slip op. at *7–*10 (D. Or. Apr. 18, 2026) (same in connection with Secretary Kennedy's declaration concerning gender affirming care); *New York v. Kennedy*, 789 F. Supp. 3d 174, 201–04 (D.R.I. 2025) (same in connection with agency reorganization and reduction-in-force announcement).

Just as funding freezes and agency dismantlement are final actions even when implemented in a piecemeal fashion, ACIP's reconstitution is most reasonably understood as a single, consummated final action. Indeed, that is exactly how Secretary Kennedy described it in the Wall Street Journal when he fired all incumbent members: he had decided to "totally reconstitut[e] ACIP" in "[a] clean sweep." Robert F. Kennedy, Jr., *RFK Jr.: HHS Moves to Restore Public Trust in Vaccines*, Wall St. J. (June 9, 2025) ("Kennedy WSJ editorial"), https://www.wsj.com/opinion/rfk-jr-hhs-

11

moves-to-restore-public-trust-in-vaccines-45495112. This was not a "merely tentative or interlocutory" action. *Bennett*, 520 U.S. at 178. Rather, it was a definitive action on which "the Secretary had made up his mind." *Student Loan Mktg. Ass'n v. Riley*, 104 F.3d 397, 405 (D.C. Cir. 1997) (finding finality where agency secretary's "unequivocal[]" position "confirmed that the Department's view was definitive").

In any event, it is immaterial whether reconstitution is construed as a single final action or as a series of discrete final actions. *See New York*, 133 F.4th at 68 ("[W]e are not aware of any supporting authority for the proposition that the APA bars a plaintiff from challenging a number of discrete final agency actions all at once."). And it is similarly immaterial whether (Br. at 8) ACIP's membership "could still change" in the future. *See, e.g., Hawkes*, 578 U.S. at 598 (possibility that agency may revise its action "is a common characteristic of agency action," and does not render a decision nonfinal); *Waterkeeper All. v. EPA*, 140 F.4th 1193, 1207 (9th Cir. 2025) (agency action does not lack finality merely because the agency may "need to do something similar again in the future").

**B.** **Legal consequences flowed from the action because state legal codes and public health systems are tethered to ACIP's expertise.**

Defendants assert that "[n]o legal consequences flow from placing someone on an advisory committee." Br. at 28. Carried to its logical conclusion, the implication is that it makes no difference whether ACIP is populated by the world's foremost vaccine experts, by anti-vaccine activists, or by lay people. This is profoundly wrong.

The "legal consequence" inquiry under *Bennett* extends beyond the legal consequence to the plaintiffs in a particular case—as *Bennett* itself makes clear. 520 U.S. at 178 (finding legal consequence prong met because the Biological Opinion at issue "alter[ed] the legal regime to which the action agency is subject"); *Ctr. for Biological Diversity v. Haaland,* 58 F.4th 412, 419 (9th Cir. 2023) (considering whether action "alter[ed] the rights of the [plaintiff] or any other third party").

Defendants acknowledge that ACIP's recommendations are embedded in "numerous state laws," Br. at 51, but then ignore the legal import of this longstanding reliance. *See* Ass'n of State and Territorial Health Offs., *Impact of the Advisory Committee on Immunization Practices Recommendations on State Law* (June 23, 2025) (as of June 2025, nearly 600

statutes and regulations across forty-nine states, territories, and Washington, D.C. incorporated ACIP recommendations by reference into scope of practice laws, school entry requirements, and insurance coverage requirements, among other places).

Historically, states have relied on ACIP in their public health laws because FACA's requirements—mandating fair balance and prohibiting inappropriate influence, thereby preserving the committee's reasoned judgment—had cemented ACIP as the gold standard in scientific reliability. This interdependence was an outgrowth of the HHS Secretary's express statutory obligations to "assist States … in the prevention and suppression of communicable diseases," "cooperate with and aid" states "in the enforcement of their quarantine and other health regulations," and advise the States "on matters relating to the preservation and improvement of the public health." 42 U.S.C. § 243(a).

Defendants, however, eviscerated ACIP's membership in its scientifically reliable form and replaced respected experts with unvetted vaccine skeptics who were plainly unqualified under ACIP's longstanding membership requirements, in violation of FACA. The notion that this has no legal consequence until there is "downstream" action by ACIP and the

14

Secretary is therefore absurd. States incorporated reliance on a properly constituted body of independent experts with fairly balanced views into their legal codes, and now those legal codes incorporate recommendations from an unlawfully constituted and tainted body.

Further, if the unlawfully constituted ACIP does nothing, it is useless and would not fulfill its advisory obligations under 42 U.S.C. § 217a(a). And, if it makes a recommendation, states that have historically relied on ACIP recommendations understand that they can no longer do so because the Secretary's unlawfully constituted incarnation of "ACIP" is not the same scientifically sound ACIP referenced in their legal codes. Thus, Secretary Kennedy's reconstitution of ACIP by itself—separate and apart from ACIP's subsequent recommendations—was a legal and public-health earthquake for states.

Delaware, for example, expeditiously amended its health regulations to incorporate recommendations from the American Academy of Pediatrics ("AAP") and other professional organizations. *See* 27 De. Reg. 863 (April 2026). It also updated statutes relating to public school enrollment to remove references to ACIP. *See* Del. Code tit. 14, § 131. Similarly, Colorado incorporated AAP's 2025 recommendations into its school immunization

15

requirements via emergency rulemaking. *See* 6 CCR 1009-2(II). And New Mexico held an emergency legislative session to amend its health code to authorize its department of health to promulgate immunization rules guided by AAP's vaccine recommendations. *See* 2025 N.M. Laws, 1st Spec. Sess., ch. 5, §§ 1–15.

And of course, many state laws and regulations continue to incorporate ACIP's recommendations, complicating the administration of vaccines and public health programs. For example, Minnesota law relies on ACIP recommendations to define immunizations that are considered preventive items and services, and prohibits insurers from requiring prior authorization for immunizations recommended by ACIP. Minn. Stat. §§ 62Q.46, subd. 1(2); 62M.07, subd. 2(4). Rhode Island still incorporates ACIP recommendations in its immunization regulations for school entry. *See* 216 R.I. Code R. § 30-05-3.5.2(A). And other states, including Arizona, regulate pharmacists' ability to administer certain vaccines according to ACIP's recommendations. A.R.S. § 32-1974(A)(1), (3).

Further, as Defendants acknowledge (at 7), "Congress has incorporated ACIP recommendations into various statutes related to vaccine coverage," including the Vaccines for Children ("VFC") program. Critically,

Congress explicitly assigns ACIP the authority to "establish[] and periodically review[]," in the first instance, the list of vaccines covered under the VFC Program. 42 U.S.C. § 1396s(c)(2)(B)(i). State Medicaid programs, in turn, rely on the VFC program to meet their own statutory obligations to provide a pediatric vaccine distribution program under which "each vaccine-eligible child" is entitled to receive free vaccines. *See* 42 U.S.C. §§ 1396a(a)(62), 1396s(a)(1)(A).

Amici's alarm about Defendants' action is not grounded in "policy preference[]" or any objection to following the "prevailing approach to vaccine policy." *See* Br. at 50. Rather, their objection is that the scientific consensus on vaccine policy has not changed in the last eighteen months, yet Defendants are treating ACIP as a vehicle for promulgating predetermined conclusions, not for providing well-grounded and fairly balanced scientific advice as it was intended. *See* Kennedy WSJ editorial ("Without removing the current members, the current Trump administration would not have been able to appoint a majority of new members until 2028.").

At bottom, Defendants arbitrarily skewed and impaired federal vaccine policy without the requisite administrative process, without considering critical aspects of U.S. vaccine policy and scientific data, and

without necessary consideration of critical reliance interests in longstanding, reasoned policy—all of which undermines state health codes and state efforts to protect the public from vaccine-preventable diseases. *See, e.g.*, *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (more detailed justification required where action "has engendered serious reliance interests that must be taken into account"*)*.

### C. Defendants continue to violate FACA in multiple respects.

Defendants' related effort (e.g., at 2, 12) to disparage the district court's decision as "credentialing review" is likewise misplaced. As discussed previously, the Kennedy-appointed members are, to be sure, manifestly unqualified. But their lack of qualification, the unlawful process through which they were installed, and the ongoing pressure on them to reach predetermined results go hand in hand.

FACA's regulations specify how agencies must select advisory committee members, including "as membership vacancies occur." 41 C.F.R. § 102-3.60(b)(3)(i), (iii) (May 20, 2024 ed.). Agencies must conduct "broad outreach" to "interested parties and stakeholder groups likely to possess [the required balanced] points of view." *Id.* § 102-3.60(b)(3)(ii) (May 20, 2024 ed.). And, after establishing a pool of FACA-compliant candidates, the ACIP

18

Steering Committee must select at least two potential nominees per vacancy based on the "quality of [their] technical expertise" and "balance of specialty areas" required on the committee. *MBP* at 3.

Defendants did not do any of this. Instead, Secretary Kennedy fired the lawful, qualified ACIP members via tweet on X and a *Wall Street Journal* editorial. He then arbitrarily remade ACIP without Federal Register notice, without broadly soliciting nominations or applications, and without consulting with ACIP's Steering Committee to select qualified members with requisite expertise and viewpoint balance. *See* Ctrs. for Disease Control and Prevention, *Advisory Committee on Immunization Practices Policies and Procedures* at 16–20 (June 2022); *MBP* at 2–3.

Once seated, the reconstituted ACIP disregarded ACIP's robust, longstanding procedures for carrying out its important scientific mission. As Defendants acknowledge (at 7), "[h]istorically, before the ACIP votes on a vaccine recommendation, a Workgroup reviews the scientific evidence using the GRADE framework and the Evidence to Recommendation ["EtR"] framework." Left unstated is that the reconstituted ACIP abandoned GRADE and EtR review without providing any justification for breaking from this longstanding practice.

19

Operating without scientific constraint, the reconstituted ACIP then issued three recommendations between June and December 2025 that the district court found unlawful—and that Defendants did not appeal—in the short time that it sat. 3/16/26 Order at 9, 45; s*ee New York v. Kennedy*, 155 F.4th 67, 76 (1st Cir. 2025) (agency's subsequent conduct confirmed consummation and legal consequence of challenged action).

Nor is the reconstituted ACIP's future conduct any mystery. On May 29, 2026, the President issued an Executive Order that directs ACIP to align the country's childhood vaccination schedule with HHS's previous "assessment that compared United States childhood immunization recommendations with those of peer nations." *Realigning United States Core Childhood Vaccine Recommendations with Best Practices from Peer, Developed Countries*, Executive Order (May 29, 2026). The "assessment" referenced in the Executive Order is the Høeg-Kulldorf Report, a 33-page document that was ostensibly prepared pursuant to a previous directive by President Trump, and which served as the basis for the unlawful January 2026 childhood immunization schedule. *See Aligning United States Core Childhood Vaccine Recommendations with Best Practices from Peer, Developed Countries,* Presidential Memorandum (Dec. 5, 2025); Br. at 11 (admitting that

20

Defendants issued the January 2026 schedule "pursuant to a December 5, 2025 Presidential Memorandum").

There is therefore zero doubt that if the unlawfully constituted ACIP reconvenes, it will continue to remake the nation's childhood vaccination schedule based on political edict, not scientific inquiry. This is not merely an informed inference based on recent history—rather, it is what Defendants have explicitly told the Court. 6/12/26 Motion to Expedite Appeal and for Expedited Briefing Schedule, at 1, 5 (disclosing that "a recent Executive Order … *demand[s]* ACIP action" and "*directs* the CDC and ACIP to update the childhood and adolescent schedule") (emphases added).

Contrary to Defendants' misconception, an Executive Order does not provide cover for otherwise unlawful administrative action. *See, e.g.*, *Agatha v. Trump*, 151 F.4th 9, 11 (1st Cir. 2025) ("[A]gency action that carries out a presidential directive is ordinarily subject to APA review."). Instead, Defendants' expectation that ACIP will rubberstamp predetermined conclusions is antithetical to fair balance and a particularly egregious display of "inappropriate[] influence[] by [an] appointing authority." 5 U.S.C. § 1004(b)(2)–(3).

**III. The ACIP reconstitution is reviewable even if it was an intermediate action.**

Finality issues aside, "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. Thus, when there is final action on review, the court "need not decide" whether all of the challenged actions are final. *Yaman v. U.S. Dep't of State*, 634 F.3d 610, 613 (D.C. Cir. 2011) (finality question was "moot" where separate challenges to final action and arguably nonfinal action were consolidated).

Here, Defendants do not dispute that CDC's adoption of ACIP's hepatitis B and COVID recommendations was final action under the APA. *See* Br. at 2 ("If anything here is final agency action, it is the CDC Director's adoption of a recommendation."). And by Defendants' own characterization, the ACIP reconstitution was "upstream" of this final action. Br. at 19. Thus, according to Defendants, "when the CDC adopts an ACIP recommendation, the FACA issue folds into analysis of that downstream action." *Id.* at 34; *see also id.* at 28 ("*Wheeler* … confirms that FACA's fair-balance requirement is reviewable … through a reviewable final agency action.").

Defendants' effort to parse apart their actions is therefore ultimately a futile exercise. Irrespective of whether the ACIP reconstitution is itself final action—or whether it "folds into … downstream action"—it is reviewable under § 704. *See, e.g.*, *F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 245 (1980) (holding that the "alleged unlawfulness in the issuance of" an administrative complaint would be reviewable upon issuance of a final cease-and-desist order under § 704); *Accrediting Council for Indep. Coll. & Schs. v. DeVos*, 303 F. Supp. 3d 77, 116 (D.D.C. 2018) ("the Court rejects the defendants' argument that intermediate agency action is never reviewable, as that position is explicitly contradicted by the APA" and "may review the intermediate decisions that preceded the final decision"); 73A C.J.S. Public Administrative Law and Procedure § 497 ("An express qualification of the finality requirement … applies under the APA to … intermediate agency action or ruling not directly reviewable but subject to review on the review of the final agency action.").

## CONCLUSION

Defendants cannot throw a grenade into a pillar of the country's public health system and then credibly protest that its sabotage was not final action

without legal consequence. The Court should affirm the district court's decision.

Respectfully submitted this 23rd day of July, 2026.

KRISTIN K. MAYES
  ARIZONA ATTORNEY GENERAL

By: /s/ *Joshua D. Bendor*
Joshua D. Bendor (Bar No. 1214789)
Clinten N. Garrett (*forthcoming*)
Syreeta A. Tyrell (Bar No. 1217693)
Alexa G. Salas (Bar No. 1219276)
  OFFICE OF THE ARIZONA
  ATTORNEY GENERAL
2005 N. Central Ave.
Phoenix, AZ 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Clinten.Garrett@azag.gov
Syreeta.Tyrell@azag.gov
Alexa.Salas@azag.gov
ACL@azag.gov

*Counsel for State of Arizona*

ROB BONTA
*Attorney General*
*State of California*
1300 I St.
Sacramento, CA 95814

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway, 10th Floor
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 04333

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 St. Paul Place
Baltimore, MD 21202

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr.
Boulevard
St. Paul, MN 55155

JENNIFER DAVENPORT
*Attorney General*
*State of New Jersey*
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

RAÚL TORREZ
*Attorney General*
*State of New Mexico*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501

DAN RAYFIELD  
*Attorney General*  
*State of Oregon*  
1162 Court Street NE  
Salem, OR 97301

JOSH SHAPIRO  
*Governor*  
*Commonwealth of Pennsylvania*  
501 North 3rd Street  
508 Main Capitol Building  
Harrisburg, PA 17120

PETER F. NERONHA  
*Attorney General*  
*State of Rhode Island*  
150 South Main Street  
Providence, RI 02903

JOSHUA L. KAUL  
*Attorney General*  
*State of Wisconsin*  
17 W. Main Street  
Madison, WI 53703

**CERTIFICATE OF COMPLIANCE**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because this brief contains 4,357 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Book Antiqua font.

By */s/ Joshua D. Bendor*

**CERTIFICATE OF SERVICE**

I certify that I presented the above and foregoing for filing and uploading to the CM/ECF system which will send electronic notification of such filing to all counsel of record.

Dated this 23rd day of July, 2026.

*/s/ Joshua D. Bendor*